JOURNAL ENTRY AND OPINION
The issue in this appeal is whether the manifest weight of the evidence establishes that Harris assaulted Damien Miller. The trial court concluded that under the aider and abettor law Harris' presence at the scene of the crime sufficiently established his guilt. Harris challenges this ruling because the evidence is a "blur" as to whether Miller was struck by Harris' group or a person from Miller's group. Harris assigns the following errors for our review:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION PURSUANT TO CRIM.R. 29 FOR JUDGMENT OF ACQUITTAL AT THE CONCLUSION OF THE PROSECUTION'S CASE IN CHIEF.
 II. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO CONVICT APPELLANT OF ASSAULT, DENYING HIM LIBERTY WITHOUT DUE PROCESS OF LAW, WHEN THE PROSECUTION FAILED TO PROVE THE ELEMENTS OF THE CRIME BEYOND A REASONABLE DOUBT.
 III. THE TRIAL COURT'S CONVICTION OF APPELLANT FOR THE CRIME OF ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Having reviewed the record and the legal arguments of the parties, we reverse the decision of the trial court. The apposite facts follow.
At Harris' trial, the victim Damien Miller testified that Harris struck him several times with a bat on his arm, which resulted in medical bills of $1,000. During the direct examination, Miller appeared clear that Harris struck him. However, on cross-examination, he stated someone hit him from the back and he turned to block the hit and saw Harris with the bat. After the appellee City of Strongsville rested its case, the court addressed Miller. The court asked Miller if Miller saw Harris hit him with the bat, and Miller replied "yes." Thereafter, Harris' lawyer made a perfunctory Crim.R. 29 motion, of which the court replied "that will appeal to the rule." At which time, the defenses proceeded.
Harris testified that he and three friends of Jason Benham, who is Miller's friend, attended Miller's Halloween party in Strongsville, Ohio. They began socializing when one of Harris' friends informed the group that the group had been asked to leave. Harris described the group as three blacks and five whites who were asked to leave. As they exited, somebody from Miller's party said "niggers hang in a noose." Someone from Harris' group threw a can of beer at Miller's door and a melee ensued. Harris testified that he ended up on the floor with Miller on top of him and someone struck Miller several times with the bat. Harris maintained he did not strike Miller. The fight eventually broke up. The police arrived while Harris' group traveled through the parking lot. The police stopped them and eventually had people from the party identify Harris' group.
During Harris' testimony, some discussion took place regarding a pretrial where Miller allegedly offered to drop the charges if Harris told him who hit him. On re-direct examination of Miller during the city's rebuttal of Harris, the city's lawyer asked Miller if this had occurred. Miller responded, "no."
Thereafter, the city's lawyer questioned Miller regarding Harris' testimony that he could not have struck Miller because during the melee, Miller was on top of him. Miller responded "there was probably one underneath me, yeah, I couldn't tell you who that was."
On recross-examination of Miller, Harris' lawyer asked Miller "how do you know he was holding the bat?" Miller responded, "I don't." Harris' lawyer said "you don't," and Miller responded "no." The court then started questioning Miller again and the following exchange took place:
 THE COURT: You don't know if he was holding the bat or not, you didn't see that?
 THE WITNESS: No. When I looked up — when I walked into court and I seen him I know I've seen him that night.
THE COURT: And where did you see him?
THE WITNESS: In my hallway.
THE COURT: You saw other people there, too?
THE WITNESS: Yeah.
 THE COURT: Okay. The question is, where did you see him and what was he doing to you out in the hallway?
 THE WITNESS: He was the only one — well, when I look back at it all I see is a blur. I don't — like I said, I can't say that he is the one with the bat. He is the one that I seen that night and people that seen — him or — or seen the person hit me described him.
The court then verified from Miller that someone instead was beneath him during the fight; but as Miller testified the entire matter was a blur.
The trial court then made the following ruling:
 I do find that the defendant is guilty even though there was some (inaudible) it isn't entirely clear as to whether Mr. Harris swung the bat, he was right there involved, participated in the assault and is criminally liable of the assault. (Inaudible) he had stayed there, he did not withdraw. It's clear beyond a reasonable doubt that he was right there in the immediate proximity of Mr. Miller when the bat was swung and hit. Whether he or another person swung the bat, he stood there and was responsible.
 So if you can come up here regarding that. And what do you have to say before passing?
The court learned from the city that Harris had no prior record and then sentenced him as follows:
 (inaudible) $1,000 (inaudible) and suspend all about a $100 upon restitution of medical bills of $1,000. 60 days in jail suspend all but five days (inaudible) of his active probation. I am required to tell you that you do have a right to appeal (inaudible) so then within 30 days you have a right to be (inaudible) if you don't have the money to hire a lawyer you have the right to a court appointed lawyer on the appeal, and you have the right to (inaudible) those are the rights you have on the appeal. (Inaudible) the court would be required to enter an appeal notice of appeal for you if you request that (inaudible) — [.]
This appeal followed.
We will address first Harris' assigned error three — manifest weight of the evidence. Because we find the weight of evidence in Harris' favor, we reverse the trial court and conclude that the remaining assigned errors are moot.
The law in this state is that the "weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before then. Weight is not a question of mathematics but depends on its effect in inducing belief.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. Thus, our inquiry under State v. Thompkins is whether the weight of the evidence sustains the conviction. If not, we must conclude that the trial court lost its way and created a miscarriage of justice. In substance, we must determine if the evidence weighs heavily against the conviction. Id.
Accordingly, under State v. Thompkins, the evidence here weighs heavily against conviction. Harris testified that he could not have caused Miller's injury because he was pinned beneath Miller. Miller testified that one of the males was beneath him. Miller eventually told the court the truth that he did not know who struck him. Miller also testified that the police paraded the men before them for identification purposes and he picked Harris. Because of these facts, we are required to re-weigh the testimony in favor of Harris not only because of Harris' testimony but because of Miller's testimony who represented the city's entire case. Once Miller recanted his identification of Harris and substantiated that an unidentified body was pinned underneath him, the evidence shifted dramatically in favor of Harris. Harris testified that he was pinned beneath Miller and could not have hit him with the bat. Additionally, we are struck by the fact that the bat appeared at the party, as a part of one of Miller's friends' costume and Harris testified he saw the bat near the door. Consequently, in this beer-laced melee, anyone could have had the bat. The evidence did not sustain the conviction.
Judgment reversed.
This cause is reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
JAMES M. PORTER, A.J., and TERRENCE O'DONNELL, J., CONCUR.
 _________________________________ PATRICIA ANN BLACKMON, JUDGE